IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CAROLYN DE GUZMAN | * |
| Plaintiff | * Civil No. **PJM 08-3213** |
| NATIONAL INSTITUTES OF HEALTH FEDERAL CREDIT UNION | * |
| Defendant | * |

## MEMORANDUM OPINION

Carolyn de Guzman, *pro se*, has sued National Institutes of Health Federal Credit Union ("the Credit Union"), alleging employment discrimination based on race (Asian) and national origin (Filipino) and retaliation after she was dismissed from her position as a Senior Credit Card Specialist in December 2006.

The Credit Union has filed a Motion for Summary Judgment, arguing that de Guzman has failed to establish a *prima facie* case of either discrimination or retaliation.

For the following reasons, the Credit Union's Motion [Paper No. 24] is **GRANTED**.[1]

I.

De Guzman worked for NIH Federal Credit Union for nine years. On December 22, 2006, she was terminated from her position as Senior Credit Card Specialist because, according to the Credit Union, she had significant performance issues. For example, on May 24, 2006, de

---

[1] De Guzman has filed a Motion to Appoint Counsel [Paper No. 22]. The Court finds that de Guzman is sufficiently capable of presenting and in fact has adequately presented her claim. The Motion is **DENIED**.
De Guzman has also submitted a Motion for Summary Judgment [Paper No. 27]. Because the Court grants the Credit Union's Motion for Summary Judgment, de Guzman's Motion for Summary Judgment is **DENIED WITH PREJUDICE**.

1

Guzman was warned that she had violated provisions of the Association Handbook by performing maintenance transactions for her family members. As a recent example, on August 18, 2006, another Credit Union employee mistakenly deposited $4,500 into de Guzman's personal account and de Guzman, undoubtedly noticing the error, transferred and spent the money without notifying the Credit Union of the mistake. Because she failed to take steps to notify the Credit Union of the erroneous deposit, de Guzman was suspended with pay pending an investigation. De Guzman received a final, written warning based on her failure to take reasonable action regarding the $4,500 erroneous deposit but was eventually reinstated to her position at the Credit Union. De Guzman denies that any of the foregoing actions by the Credit Union amounted to discipline or that she was even warned about deficient performance and claims that her job performance evaluations were always satisfactory.

On September 19, 2006, de Guzman filed a grievance with the Credit Union's Ethics Hotline, alleging violation of her right to privacy and civil rights with respect to her supervisors' handling of her suspension and warning following the erroneous $4,500 deposit. An independent agent engaged by the Credit Union to investigate de Guzman's allegations reported that de Guzman admitted that the handling of her case was based not on her race or national origin, but rather that she contended she had been "financially profiled" when asked if she or a member of her family had a gambling problem. The investigation concluded that the Credit Union's actions following the erroneous deposit were appropriate.

De Guzman's performance issues surfaced again on December 6, 2006, when she deposited $1,100.00 in checks from her SunTrust account into her account at the Credit Union but did not have sufficient funds to cover the checks. At that point de Guzman was again suspended, again with pay, and was asked to provide documentation demonstrating that the bad

checks were a result of SunTrust's error and that in fact she had sufficient funds in her SunTrust account to cover the checks. De Guzman subsequently admitted to her supervisor at the Credit Union that she had indeed lacked sufficient funds to cover the checks. As a result, de Guzman was suspended without pay and, on December 22, 2006, formally dismissed.

De Guzman filed her Complaint in this Court on December 1, 2008, alleging that, in violation of Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), she was discriminated against on the basis of her race (Asian) and national origin (Filipino) and retaliated against because she filed a management grievance. Initially, the Credit Union filed a Motion to Dismiss Or, Alternatively, Partial Motion to Dismiss based on de Guzman's failure to file the Complaint within 90 days of the receipt of her right-to-sue letter, as required by the Equal Employment Opportunity Commission ("EEOC"). The Court disagreed, holding that suit had effectively been filed within 90 days. The Court, however, granted the Credit Union's Partial Motion to Dismiss because de Guzman had failed to file her employment discrimination claim with the EEOC within the required 300 days of the alleged discriminatory acts. The Court held that any alleged discrimination or retaliation occurring before December 19, 2006 was time-barred, while any discrimination or retaliation occurring thereafter would not be.

The Credit Union was requested by the Court to file a Motion for Summary Judgment to test the validity of de Guzman's Complaint. De Guzman responded by filing a Cross Motion for Summary Judgment.

## II.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

3

court is required to view the facts, as well as inferences drawn from the facts, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Comp. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, "[a] mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (citations omitted). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* Although *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers," *Allen v. Brodie*, 573 F. Supp. 87, 89 (D. Md. 1983) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), they "must still set forth facts sufficient to withstand summary judgment," *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 480 (D. Md. 2002).

### III.

De Guzman first claims that she was discriminated against because of her race and national origin in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Claims of discrimination are analyzed under the familiar burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 793 (1973). *McDonnell Douglas* holds that "[t]he complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of racial discrimination." 411 U.S. at 802. Specifically, a plaintiff bringing a Title VII suit must show that (1) she is a member of a protected class; (2) she was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) she was treated differently than similarly situated individuals outside of her protected class. *Nichols v. Hartford County Bd. of Educ.*, 189 F. Supp. 2d 325, 340 (D. Md. 2002). Once a

plaintiff establishes a *prima facie* case, a presumption of discrimination arises and the burden of production shifts to the defendant/employer to demonstrate a legitimate non-discriminatory reason for the action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *see also McDonnell Douglas*, 411 U.S. at 802. Thereafter, the burden of production (and ultimately the burden of proof) is shifted back to the plaintiff to show that the defendant/employer's reason was pretextual. *See Hicks*, 509 U.S. at 511.

As indicated, only events occurring on or after December 22, 2006 are in play.

The Court finds that de Guzman has not established *prima facie* that she was terminated because of her race or national origin. Though she is a member of protected classes – Asian and Filipino – she has failed to establish either that she was performing her duties in a satisfactory manner or that she was treated differently than similarly situated individuals outside of her protected class. She unquestionably had performance issues regarding her handling of personal transactions for members of her family, the unreported and unauthorized use of mistakenly deposited funds, and the $1,100 in bounced checks. Indeed, the EEOC, in its investigation, specifically found that de Guzman had "significant performance issues" prior to her termination.

Nor has de Guzman established any facts that would enable the Court to conclude that her termination was the result of discrimination based on her race or national origin. Even if her termination was unwarranted, "Title VII is not a vehicle for substituting the judgment of a court for that of an employer." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (citing *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 377 (4th Cir. 1995)). Rather, the Court's "sole concern" is whether The Credit Union terminated de Guzman's employment for discriminatory reasons. *DeJarnette*, 133 F.3d at 298 (citing *Giannopolous v. Brach & Brach Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997)). De Guzman must establish a *prima facie* case "by

5

proving a set of facts which would enable the fact-finder to conclude in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." *Nichols*, 189 F. Supp. 2d at 340 (quoting *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995)). But de Guzman claims only that she was "financially profiled" and discriminated against because of her personality as a "quiet employee." These allegations do not permit the conclusion that she was discriminated against because of her race or national origin.

## IV.

De Guzman also alleges that she was retaliated against for filing a complaint against the Credit Union on their Ethics Hotline. To establish a *prima facie* case of retaliation, a plaintiff must prove that (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection exists between the protected activity and the asserted adverse action. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Protected activities fall into two categories: participation or opposition. *See* 42 U.S.C. § 2000e-3(a). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also* § 2000e-3(a). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to establish a legitimate reason for the adverse action. *Nichols v. Hartford County Bd. of Educ.*, 189 F. Supp. 2d 325, 343 (D. Md. 2002) (citing *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 242 (4th Cir. 1997)).

Here, de Guzman unquestioningly suffered an adverse employment action because she was terminated on December 22, 2006. But to survive summary judgment, de Guzman must

have evidence that filing her grievance was a protected activity. *See Laughlin*, 149 F.3d at 258. As to this, she has not shown either that she was engaged in protected activity or that a causal connection exists between the protected activity and the adverse action. *See Holland*, 487 F.3d at 218. The filing of a grievance on the Credit Union's Ethics Hotline was not "protected activity" under Title VII because de Guzman was not participating in a Title VII investigation nor, by her own admission, was she voicing her opinion to call attention to her employer's discriminatory activities. *See Laughlin*, 149 F.3d at 259. Again, the EEOC investigation concluded that "[e]vidence showed that [de Guzman's] complaints regarding [her] August 24th suspension and [her] September 1st warning were not protected activity under Title VII." Confirming this, the independent investigation that the Credit Union commissioned resulting from de Guzman's complaint found that she "did not believe the handling of her case was based on her race (Asian Pacific Islander), sex or national origin (Philippines)." Rather, as de Guzman herself stated, she felt only that she had been "financially profiled" – a term not only vague in meaning and scope but by any construction not even remotely supported by record evidence.

Even if her complaint could be deemed "protected activity," de Guzman has not demonstrated a causal connection between her complaint to the Ethics Hotline and her termination. *See Holland*, 487 F.3d at 218. To survive summary judgment, a plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Nichols*, 189 F. Supp. 2d. at 344 (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). De Guzman filed her grievance to the Hotline on September 19, 2006. Only after she was reprimanded for depositing bad checks into her NIH Federal Credit Union account, on December 22, 2006, was she dismissed. Rather than being the result of any discriminatory activity, the

termination appears plainly to have been the result of several written warnings of performance deficiencies, culminating in the deposit of the bad checks on December 6, 2006. De Guzman has not shown that she was terminated *because* she filed a grievance.

V.

For the foregoing reasons, Defendant NIH Federal Credit Union's Motion for Summary Judgment [Paper No. 24] is **GRANTED**.

A separate Order will issue.

July 13, 2010

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT COURT JUDGE